*In re* APPLICATION OF DU PAGE COUNTY COLLECTOR—(The People *ex rel.* John Lotus Novak, Du Page County Collector, Applicant-Appellee, *v.* Arthur Rubloff & Company, Objector-Appellant; Township of Wayne, Appellee).

Second District No. 82—739

Opinion filed September 28, 1983.

Ralph C. Putnam, Jr., and Paul A. Lewis, both of Alschuler, Putnam, McWethy, Funkey & Grometer, P.C., of Aurora, for appellant.

John X. Breslin, of State's Attorneys Appellate Service Commission, of Ottawa, for appellee Du Page County Collector.

James F. Campion, of Wheaton, for appellee Wayne Township.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Arthur Rubloff & Company (Objector) objected to taxes extended on its property in Wayne Township for the year 1978. It appeals from the judgment which overruled its objections and found in favor of the

applicant, the County Collector of Du Page County (Collector).

The case was heard on a stipulation of facts which repeated the material allegations contained in the objections, and upon the testimony of the town supervisor Roy Paeth. The Objector paid the 1978 taxes in full under protest and filed timely written objections. The appeal concerns objections to taxes extended for Wayne Township "for town purposes" in the amount of $27.88; "special bridge tax" in the amount of $81.04; "equipment and building tax" in the amount of $56.73; and "special road tax" in the amount of $162.08.

### Objection to Levy for Town Purposes

Wayne Township's budget and appropriation ordinance was adopted July 24, 1978, and filed with the county clerk on July 28, 1978. Its tax levy was adopted August 14, 1978, and filed with the county clerk on August 15, 1978. The budget for town purposes is itemized and totals $256,657. The levy is also itemized and totals $282,823. The disparity between the levy and appropriation for the item "administrative" produced a corresponding excess in the levy which translated to a tax of $27.88.

The Collector contends that the appropriation ordinance no longer limits the amount of the levy; or, alternatively, that the appropriation ordinance in question is not related to the tax levy for 1978 since the levy will not produce revenue to be spent on the appropriation ordinance in 1978. The Collector argues, based on the testimony of the town supervisor, that the practical reason for the difference between the appropriation ordinance and the levy, although for the year 1978, is that no revenue would be produced until some time in June of 1979 when taxes are first collected on this levy; and that the July 24, 1978, appropriation was executed with tax monies collected in 1978 on the levy made in 1977.

The Collector's argument that the appropriation ordinance no longer limits the amount of the levy relies on a change in the Illinois Municipal Code. The former statute (Ill. Rev. Stat. 1967, ch. 24, par. 8—3—1) contained the provision

> "corporate authorities shall ascertain the total amount of the appropriations legally made for all corporate purposes to be provided for by the tax levy of that year. \*\*\* *[T]he corporate authorities shall levy not to exceed the total amount so ascertained \*\*\*.*" (Emphasis added.)

The underlined language was removed before the 1978 tax year. See Ill. Rev. Stat. 1977, ch. 24, par. 8—3—1.

However, as the Objector states, the cited section 8—3—1 as pres-

ently constituted is directed solely at municipalities and does not govern townships. Ill. Rev. Stat. 1981, ch. 24, par. 1—1—2(1).

The Objector further argues that under the Illinois Municipal Budget Law (Ill. Rev. Stat. 1981, ch. 85, pars. 801 *et seq.*), which does include townships, an evident purpose is shown to make taxing bodies levy within the constraints of a budget, thus that the budget ordinance limits the levy for the same period. The Collector concedes that the Illinois Municipal Budget Law does govern townships but argues that there is nothing in its language which states that the budget ordinance limits the levy for the same period. It argues that, in effect, the only limitation on the levy is the maximum rate which may be levied and the good faith of the municipality. We cannot agree.

■■ It has long been the view that appropriation ordinances are for the purpose of circumscribing the items for which taxes may be raised and constitute a limitation on the amounts to be raised. *People ex rel. Larson v. Thompson* (1941), 377 Ill. 104, 118; *People ex rel. Ruchty v. Chicago & North Western Ry. Co.* (1953), 1 Ill. 2d 574, 578; *cf. Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 857 (section 3 of the Illinois Municipal Budget Law (Ill. Rev. Stat. 1981, ch. 85, par. 803) has as one of its purposes "to require governmental bodies to budget in advance the funds to be expended for each purpose and, once a budget and appropriation ordinance is adopted, that only expenditures for those purposes and in the sums therein set forth are permissible").

The Collector's argument that the cited cases are no longer applicable because of the removal of the limitation in the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 8—3—1) is not persuasive. Wayne Township at the time of its appropriation and levy was subject to the Illinois Municipal Budget Law (Ill. Rev. Stat. 1977, ch. 85, par. 801 *et seq.*). *Ruchty* involved a 1949 school levy when school districts were subject to the budget law (Ill. Rev. Stat. 1949, ch. 120, par. 365.2) and the fact that school districts are no longer subject to the budget law does not diminish the rationale of that case and its applicability here. Also, the applicant's reliance on *People ex rel. Prindable v. New York Central R.R. Co.* (1947), 397 Ill. 50, is inapt because this involved a 1952 school levy after the legislature removed school districts from the Illinois Municipal Budget Law and added a provision to the school code to govern school budgeting so that the school code alone governed the 1952 levy. Here the Illinois Municipal Budget Law is being construed.

■■ The real issue is whether the connection between the levy and the appropriation ordinance has been shown. It is true that if the or-

dinance had nothing to do with the levy but the expenditures were of dollars from past levies and other sources, the levy would be irrelevant and would not avoid the tax. (See *People ex rel. Prindable v. Illinois Central R.R. Co.* (1945), 389 Ill. 474, 477; *People ex rel. Manifold v. Wabash R.R. Co.* (1945), 389 Ill. 403, 409; *People ex rel. Prindable v. New York Central R.R. Co.* (1947), 397 Ill. 50, 55.) In *Wabash*, the court noted that there was no proof that the expenditure of any of the 1942 levy was to be made during the fiscal year commencing March 31, 1942, and ending March 29, 1943, for which the objected to appropriation had been made. The court noted that it followed that a budget and appropriation ordinance providing only for expending cash or cash items on hand of a previous year could not be considered as a budget of the revenue to be derived from a subsequent levy and that this did not invalidate the levy. (*People ex rel. Manifold v. Wabash R.R. Co.* (1945), 389 Ill. 403.) In *Wabash, People ex rel. Larson v. Thompson* (1941), 377 Ill. 104, was distinguished for the reason that in *Thompson* "the appropriation of money on hand was not involved." 389 Ill. 403, 409.

Here, Paeth, testifying in July of 1981, said by way of illustration that they were currently in their operating budget for the years 1981-1982 and that in September they would file a levy for 1982-1983 for the revenues to be received from June 1, 1982, through May of 1983. He said that there would not be a direct relationship between the budget and appropriation ordinance for the period June 1, 1978, and ending May 31, 1979, and the levy that was filed on August 14, 1978.

The record, however, does not indicate that the 1978 expenditures were to be made solely from monies on hand. Although it shows that net taxes of 1977 and prior levies to be received during this fiscal year and available for appropriation amount to $103,347 in the town fund, it also reveals that money to be borrowed in this fiscal year by sale of tax anticipation warrants based on the 1978 levy amounted to $111,000. As argued by the Objector the warrants were drawn under a statute which empowers townships to issue them "drawn against and in anticipation of any taxes already levied." (Ill. Rev. Stat. 1977, ch. 146½, par. 2.) Thus the 1978 levy was required before the township could issue valid warrants against that levy and without it the township would have lost 43% of the estimated receipts needed to meet the expenditures budgeted for the fiscal year. In effect, then, the warrants enabled the townships to receive during the fiscal year money to be collected from the 1978 levy. Therefore, the warrants are the elements that relate the levy to the appropriation ordinance.

*People ex rel. Ruchty v. Chicago & North Western Ry. Co.* (1953),

1 Ill. 2d 574, involved a budget and appropriation ordinance fixing a fiscal year commencing July 1, 1949, and which appropriated 1949 taxes by budgeting revenue of $30,000 from sale of anticipation warrants on 1949 taxes. Here Wayne Township's budget and appropriation ordinance fixes the fiscal year commencing June 1, 1978, and appropriates 1978 taxes by budgeting revenue of $111,000 from the sale of anticipation warrants on 1978 taxes. The situations are similar and under *Ruchty* the relationship between the 1978 budget appropriation ordinance and the 1978 levy has been established. To the extent that the levy exceeded the appropriation the objection should have been sustained.

### OBJECTION TO LEVY FOR SPECIAL BRIDGE TAX

Objector contends that the special bridge tax was void because the township, in absence of a maximum levy for the general road tax for the previous two years, was not authorized to levy the tax. Involved is the interpretation of the following statutory provisions:

"When it is necessary to construct or repair any bridge *** and the tax rate for road purposes in such road district was in each year for the 2 years last past not less than the maximum allowable rate provided for in Section 6–501 of this Code *** the highway commissioner *** may petition the county board for aid *** the county board shall appropriate from the 'county bridge fund' in the county treasury a sufficient sum to meet one-half the expense ***." Ill. Rev. Stat. 1977, ch. 121, par. 5–501.

"The highway commissioner in each road district in each county having adopted township organization shall in accordance with 'The Illinois Municipal Budget Law' *** prepare or cause to be prepared a tentative budget and appropriation ordinance and file the same with the clerk of such township ***." Ill. Rev. Stat. 1977, ch. 121, par. 6–501(b).

"For the purpose of constructing or repairing bridges *** at the joint expense of a county and a road district *** there may be included in the annual tax levies *** a tax of not to exceed .05% of the value of all the taxable property in the road district ***.

*** The highway commissioner shall separately specify *** the amount necessary to be raised by taxation ***. [Upon approval by the county board] the county clerk shall extend the same against the taxable property of the road district ***.

*** [T]he road district may accumulate the proceeds of such

tax for such number of years as may be necessary to acquire the funds necessary to pay the district's share of the cost of such project. It shall not be a valid objection to any subsequent tax levy made under this Section that there remains unexpended money arising from a preceding levy of a prior year because of the accumulation ***." Ill. Rev. Stat. 1977, ch. 121, par. 6—508.

The Objector argues that the provision of section 5—501 that the county board must appropriate one-half the cost on the condition that the township furnish the other one-half is for the purpose of providing the township's share of the cost, and that section 6—508 limits the purpose of the tax to projects authorized under section 5—501. It argues that the history of section 6—508 confirms this in that the section originated in 1951 as section 58a of "An Act to revise the law in relation to roads and bridges" (Ill. Rev. Stat. 1951, ch. 121, par. 64a) which referenced then section 35, later enacted in almost identical language as section 5—501; and that the stated purpose of obtaining aid from the county as provided in section 5—501 (Ill. Rev. Stat. 1977, ch. 121, par. 5—501) further illustrates the purpose that the township must show its need and furnish its share of the cost to obtain the county share. The Objector further argues that section 6—508 authorizes a levy only after construction has been authorized under section 5—501, which section requires the condition of the prior two years maximum general road tax levy, which was not made. We agree.

The Collector argues that even if a precondition exists, the statute has been satisfied because, as the town supervisor testified, a levy at the maximum rate for the general road tax was intended. He stated that on the date the levies for 1976 and 1977 were required to be made an amount was levied which would have required a levy at or above the maximum rate permitted for the general road tax; however, that later multipliers were applied which increased the assessed valuation so that the amount levied no longer was at or in excess of the maximum rate permitted.

The trial court found that it was the intent of the township to levy at the maximum rate permitted by law for general road taxes; that the legislature intended that the maximum rate for the two preceding years be determined in the context of the facts existing at the time of the levy and not as the tax rate might be changed later because of an increase in the assessed valuation which was brought about by imposition of the State or county board of review multiplier.

■ The fact that valuation data was not available to enable the township to fix by computation a levy that would require extension of

the maximum allowable rate does not excuse it from meeting the precondition. Under section 6—508 (Ill. Rev. Stat. 1977, ch. 121, par. 6—508) it was the town board's duty to determine and certify to the county clerk the amount necessary to be raised by taxation for road purposes. It is the county clerk's duty, not the board's to determine the rate at which the levy is extended. The township's levy is always effective to the extent that it does not require more than the maximum rate. See *People ex rel Toman v. Chicago & Northwestern Ry. Co.* (1941), 377 Ill. 547, 550-51; *People ex rel. Carter v. Touchette* (1955), 5 Ill. 2d 303, 306.

██ █ The statute does not lend itself to the interpretation that an intent to levy the maximum based on a perception of what the rate may be satisfies the precondition to the levy of the special bridge tax. The purpose of the requirement that the township must have levied the maximum road tax for the prior two years is to show exhaustion of the township's taxing power as a condition of entitlement to county aid. (See *People ex rel. Thomas v. Wabash R.R. Co.* (1914), 265 Ill. 530, 532-33.) The town board's statutory authority and duty is to determine the maximum amount needed for road purposes for the year and it becomes the county clerk's duty to make sure that no more than the maximum rate is figured. It was stipulated that the tax rate extended for the Wayne Township general road tax in 1976 and 1977 was less than the maximum allowable rate in each of these years. Therefore, the special bridge tax for 1978 amounted to an invalid levy.

### OBJECTION TO LEVY FOR EQUIPMENT AND BUILDING

The Objector contends that the equipment and building levy for 1978 was invalid because there was no proof that the tax was submitted to the electors by ballot when it was approved in April of 1964.

It is not disputed that the question of authorizing an equipment and building tax is to be submitted by ballot. (Ill. Rev. Stat. 1963, ch. 121, par. 6—508.1.) The Objector argues that the town clerk's minutes furnish proof that the question was not submitted by ballot and that therefore the tax was not authorized. The minutes of the annual town meeting on April 7, 1964, state:

> "The town clerk then presented to the town electors a petition signed by 25 township landowners and legal voters that a vote be taken for or against an annual tax, not to exceed .035% on each $100 of the full, fair cash value as equalized or assessed by the Dept. of Revenue, to be known as the Equipment and Building Tax. Highway Commissioner John Schofield explained to the electors that the township needed a new truck. The peti-

tion is made as part of these minutes. Ray Huske moved that the requested Equipment and Building Tax be approved. Motion was seconded by Town Elector Mr. Van Patton and was unanimously approved by the Town electors."

■ ■ The town clerk is required to keep faithful minutes in the town record book of the proceedings at town meetings (Ill. Rev. Stat. 1963, ch. 139, par, 74), and every essential step in the course of a levy of taxes must appear in the official records of the bodies authorized to act on them. (*People ex rel. Toman v. Chicago Heights Terminal Transfer R.R. Co.* (1941), 375 Ill. 590, 597.) It is presumed that the officers levying the tax have properly discharged their duties (*People ex rel. Thompson v. Clark* (1975), 34 Ill. App. 3d 228, 234), until the contrary appears. The parol levy of taxes is not legally possible, but a record of the taxing body showing the levy or assessment of taxes must be kept. (*People ex rel. Wangelin v. City of St. Louis* (1937), 367 Ill. 57, 67; *Compton v. School Directors* (1955), 8 Ill. App. 2d 243, 249.) "A record which is the only source of evidence by which official action can be shown and which does not show any action shows that none was taken." (*People ex rel. Wangelin v. City of St. Louis* (1937), 367 Ill. 57, 67.) The burden of establishing the invalidity of the tax rests upon the objector. *Mid-Continental Realty Corp. v. Korzen* (1976), 40 Ill. App. 3d 133, 140.

■ The initial question is whether the recitation in the town minutes satisfies the burden of overcoming the presumption that the township officials performed their duty properly. The statement in the minutes that the question "was unanimously approved by the Town electors" in our view is less than conclusive proof that the question was *not* submitted to the town electors by a written ballot. *People ex rel. Wangelin v. City of St. Louis* (1937), 367 Ill. 57, 68, relied upon by the Objector, is distinguishable. In *City of St. Louis* there was no record made of the action of the board of review showing the assessment of the East St. Louis Union Station approach with no description of the property in the record. In several cases it has been held that where the record shows that an action has been carried by ballot but does not purport to set forth a form of the ballot, this failure does not invalidate the tax. (*People ex rel. Manifold v. Chicago, Burlington & Quincy R.R. Co.* (1944), 386 Ill. 56, 63-64; *People ex rel. Prindable v. New York Central R.R. Co.* (1948), 400 Ill. 507, 515.) The cited cases deal with a failure to include the form of a ballot in the certificate to the taxing authority. We believe, however, that the cases indicate that where, as here, the record shows that the issue was submitted to the town electors it will be presumed that the town officials did

perform their duty properly, particularly where a long interval passes without the question being raised by anyone. See *People ex rel. Prindable v. New York Central R.R. Co.* (1948), 400 Ill. 507, 514; *People ex rel. Manifold v. Chicago, Burlington & Quincy R.R. Co.* (1944), 386 Ill. 56, 62-63.

In so deciding, we are not agreeing with several of the Collector's arguments that the Objector has no standing because it was not a taxpayer in the district at the time of the authorization of the tax and thereby had no standing to object, or that *laches* or waiver barred the objection. The Objector was shown to be a recent purchaser of the property and could in no way be charged with sleeping on his rights or waiver on the basis that there was no evidence of objection to the lack of submission by a secret ballot if such was the case. In these circumstances the Collector has not sustained his burden of proving these defenses. *Auer v. Wm. Meyer Co.* (1944), 322 Ill. App. 244, 264; *Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 1052.

## OBJECTION TO LEVY FOR SPECIAL ROAD TAX

As to the special road tax which is required to be certified to the county clerk by the town board (Ill. Rev. Stat. 1977, ch. 121, pars. 6—601, 6—602), the Objector claims that the certification was by the highway commissioner instead of the town board and therefore conferred no authority on the county clerk to extend the tax for 1978, making it void.

The record shows that a certificate of tax levy for special hard roads was issued on June 21, 1976. While the body of the certificate states that the certification is by the commissioner of highways and the township board of auditors, the certificate is signed only by the Wayne Township Highway Commissioner and the Town Clerk. The certificate recites the levy of a hard road tax at .1% upon property of the town for the year 1975 "and also for each succeeding year thereafter for the period of five years for the purposes above set forth" and follows with the recitation of the particular sum for the year 1976. At the hearing Town's exhibit No. 1 was admitted into evidence. This was a certificate of tax levy filed August 12, 1976, and signed by the chairman of the board of auditors and certifies the amount necessary to be raised by taxation for the year 1977. A subsequent certificate was filed with the county clerk April 29, 1981, signed by the chairman and members of the town board verifying the tax for the year 1978.

The statute provides as pertinent:

"If a majority of all the ballots cast at such election on such proposition are in favor of such special tax, then the township board of auditors *** shall levy an annual tax in accordance with such vote and certify the same to the county clerk. That board of auditors *** shall also cause a copy of such certificate of levy to be filed in the office of the district clerk as provided in Section 6—502 of this Code." Ill. Rev. Stat. 1977, ch. 121, par. 6—602.

A tax district must follow the statute, both in making the levy and in certifying the levy to the county clerk. (*People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216.) Certification by the wrong authority confers no legal power on the county clerk to extend the tax. (*People ex rel. Heaton v. Illinois Central R.R. Co.* (1920), 295 Ill. 408, 413.) The certificate must be filed within the time prescribed or the levy will be void. (*People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216-17; *Gage v. Nichols* (1890), 135 Ill. 128, 131-32.) The statute provides that no error or informality in the levy procedure shall vitiate a tax. (Ill. Rev. Stat. 1977, ch. 120, par. 716), but proper certification has been held to be mandatory, thus a matter of substance. (*People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216-17; *People ex rel. Preisel v. New York Central R.R. Co.* (1941), 375 Ill. 574, 576; *People ex rel. Heaton v. Illinois Central R.R. Co.* (1920), 295 Ill. 408, 413.) Where a road tax is voted for a number of years, there is a duty by the certifying authority to levy the tax for the whole period and a duty on the county clerk to extend the tax each year by virtue of a single certificate; but the fact that a levy is not legally made for the first year does not destroy the right to tax for the remaining years. (*Reynolds v. Town of Elkhorn Grove* (1917), 280 Ill. 273, 277.) The validity of a tax is determined as of the time of the levy at the rate authorized when levied, not when extended. *People ex rel. Orrison v. Wabash Ry. Co.* (1931), 344 Ill. 606, 608.

The provision of the statute that the township board of auditors shall certify its levy to the county clerk appears to require that the township board and not the highway commissioner or town clerk sign the certificate.

The Collector maintains that the certificate of tax levy filed August 12, 1976, and signed by the chairman of the board of auditors (Town exhibit No. 1) is the necessary document to support the tax for 1978. The document discloses a levy of $85,000 "for the year 1977" as having been adopted August 11, 1976. A levy for 1976 or for 1977,

could not authorize the county clerk's extension of the 1978 tax. The Collector's argument that only one certificate of levy is required for a multi-year tax is not an answer to the objection. The certification was not for a five-year period but for a one-year period in the amount of $85,000 to be "levied against all taxable property of said District for the year 1977." (Apparently meant to be "1976".) This could not amount to a levy for any other tax year and could not authorize a county clerk's extension of a 1978 tax.

The April 29, 1981, certificate was too late to authorize the county clerk's extension of the tax for the year 1978. *People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216-17.

We also cannot agree with the Collector's argument that even if the certificate filed July 21, 1976, was invalid because it lacked signature of one shown to be authorized by the town board, it could be amended at any time by adding the town board's signature. The statute upon which the Collector relies provides in part:

> "*** no error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof; ***." (Ill. Rev. Stat. 1977, ch. 120, par. 716.)

Proper certification, however, is mandatory and thus a matter of substance. *People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216-17.

The judgment of the trial court of Du Page County overruling objections to taxes for town purposes in the amount of $27.88, to the special bridge tax in the amount of $81.04 and to the special road tax in the amount of $162.08 is reversed and the cause is remanded with directions to allow the objections. The judgment overruling the objections to the equipment and building tax in the amount of $56.73 is affirmed.

Reversed in part and remanded, affirmed in part.

NASH and VAN DEUSEN, JJ., concur.